# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY ATKINS,<br><br>                    Plaintiff,<br><br>vs.<br><br>RAYMOND E. MABUS, SECRETARY, DEPARTMENT OF THE NAVY,<br><br>                    Defendant. | CASE NO. 12CV1390-GPC(WVG)<br><br>**ORDER:**<br><br>**1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No. 22.]<br><br>**2) DENYING AS MOOT JOINT MOTION TO CONTINUE PRETRIAL CONFERENCE**<br><br>[Dkt. No. 35.] |

       This case arises out of the government's alleged improper disclosure of and failure to adequately safeguard Plaintiff Gary Atkins' sensitive medical records while he was a patient and employee at the Naval Medical Center San Diego. Before the Court is Defendant Raymond E. Mabus' Motion for Summary Judgment on Plaintiff's action brought pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a. (Dkt. No. 22.) The Parties have fully briefed the motion. (Dkt. Nos. 31, 32.) The Court held a hearing on the motion on June 6, 2014. Kenneth Baisch, Esq. appeared on behalf of Plaintiff; Assistant United States Attorney Katherine Parker, Esq. appeared on behalf of Defendant. Based on a review of the Parties' briefs, supporting evidence, oral

1 arguments, and the applicable law, the Court GRANTS Defendant Raymond E. Mabus'
2 Motion for Summary Judgment. (Dkt. No. 22.)

## BACKGROUND

Plaintiff Gary Atkins was diagnosed in 1994 with a life-threatening illness. (Dkt. No. 31-1 ¶ 3.) Plaintiff describes his medical condition as "uniquely sensitive and personal." (Dkt. No. 31 at 1.) From 2005 through 2011, Plaintiff was employed at the Naval Medical Center San Diego ("NMCSD," otherwise known as the "Balboa Naval Hospital") as the Division Officer for Professional Development. (Id. at ¶ 2; Dkt. No. 22-5 at 9-11.) Upon joining the NMCSD staff in 2005, Plaintiff began seeking regular treatment for his illness at NMCSD. (Dkt. No. 31-1 ¶ 4.)

In 2008, Plaintiff began to suspect that other NMCSD employees were aware of his medical diagnosis. (Dkt. No. 22-5 at 22.) On October 21, 2008, Plaintiff requested an audit of all the individuals who had accessed his medical records on the NMCSD electronic record-keeping program, AHLTA. (Dkt. No. 22-4, Ex. B at 3.) The audit did not turn up any individuals Plaintiff suspected of improperly accessing his medical records. (Dkt. No. 31-2, Ex. 3.)

In 2009,[1] Plaintiff learned from Dr. Mary Bavaro, a doctor at NMCSD, that a "problems list" populated with patients' "key medical diagnoses" could be accessed by hospital employees without need for the employees to access the respective patients' full hospital record. (Dkt. No. 22-5, Ex. A at 51; Dkt. No. 31-1 ¶ 5.) Plaintiff declares that two additional employees of NMCSD later "confirmed what had been conveyed by Dr. Bavaro." (Dkt. No. 31-1 ¶ 6) (referring to NMCSD Social Worker Lisa Hess and Psychologist or Psychiatrist Joy Martin).

In 2010, Plaintiff's supervisor at NMCSD was named "Captain Pratt"; at that

---

[1] The Court notes that Plaintiff stated this date as "in 2009" during his Deposition, (Dkt. No. 22-5 at 51:19-24), but as "in June or July of 2010" in his later-filed Declaration. (Dkt. No. 31-1 ¶ 5.) Although this discrepancy is relevant to Defendant's claims that this action is time-barred, as discussed below, the Court does not rely on the statute of limitations as the basis for its holding. The Court therefore finds this discrepancy immaterial.

same time, NMCSD also employed Lieutenant Commander Michael Simons ("Lt. Commander Simons"). (Id. ¶ 10.) Lt. Commander Simons would occasionally supervise Plaintiff in place of Captain Pratt. (Id.) On June 24, 2010, while in conversation with Lt. Commander Simons regarding NMCSD acupuncture services, Lt. Commander Simons commented that acupuncture could "help a person with the need for a certain type of test used for the illness [Plaintiff] suffer[s] from." (Id.) Plaintiff immediately reported this incident to the NMCSD Privacy Officer. (Id.)

Later on June 24, 2010, Captain Pratt and Lt. Commander Simons entered Plaintiff's office to discuss Plaintiff's conversation with the Privacy Officer. Plaintiff declares that Captain Pratt made comments he interpreted as "tacit admission that [Captain Pratt] and Simons had improperly accessed [Plaintiff's private medical data]." (Id. ¶ 12.)

In 2011, Plaintiff exchanged emails with AHLTA Sustainment Trainer Noel Molinos. (Dkt. No. 31-2, Ex. 2.) In the course of this email exchange, Ms. Molinos confirmed that "it would be accurate that if an employee really wanted to risk employment and jail time they could snoop in the system and possibly get away with no record of it." (Id.) Following this confirmation, Plaintiff left the NMCSD for a position with the Veterans Administration. (Dkt. No. 31-1 ¶ 14.) Plaintiff declares that he has had to change healthcare providers due to his lack of confidence in the NMCSD AHLTA system, and has had to pay increased insurance premiums as a result. (Id. ¶ 15.)

On June 8, 2012, Plaintiff filed the present action against Defendant Raymond E. Mabus, alleging violations of the Privacy Act of 1974, 5 U.S.C. § 552a. (Dkt. No. 1.) On March 1, 2013, Plaintiff filed a First Amended Complaint, the current operative complaint. (Dkt. No. 10.) Plaintiff's First Amended Complaint seeks compensatory damages, interest, and attorney's fees for violation of the Privacy Act of 1974 (the "Privacy Act") under two theories: (1) the government's "inadequate safeguards" failed to protect Plaintiff's confidential medical diagnosis; and (2) the government's

"improper disclosure" of Plaintiff's confidential medical information violated the Act. (Id.) Defendant now seeks summary judgment on Plaintiff's claims of both inadequate safeguards and improper disclosure. (Dkt. No. 22.)

## DISCUSSION

### I. Legal Standard on Summary Judgment Motion

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter

of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

## II.   Statute of Limitations

"An analysis of a statute of limitations question necessarily begins with identifying the available cause of action." Englerius v. Veterans Administration, 837 F.2d 895, 897 (9th Cir. 1988). The Privacy Act's two year statute of limitation, 5 U.S.C. § 552a(g)(5), begins to run when a plaintiff "knows or has reason to know of the alleged violation." Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990) (citing Englerius, 837 F.2d at 897).

As alleged in Plaintiff's First Amended Complaint, Plaintiff alleges four theories of liability under the Privacy Act: (1) disclosure of his medical records to persons who did not have a need to know the contents of his medical records; (2) failure to provide Plaintiff with a list of all persons accessing his medical records; (3) failure to keep an accurate accounting of the disclosures of his records; and (4) failure to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of the records. (Dkt. No. 10, FAC ¶ 16.)

As discussed more fully below, the first theory amounts to an "improper disclosure" claim. Defendant does not argue this claim is foreclosed by the statute of limitations. (Dkt. No. 22-1 at 5.) In any event, as the "improper disclosures" alleged by Plaintiff occurred on and after June 24, 2010, (see Dkt. No. 31-1, Atkins Decl. ¶ 10), the Court finds that the statute of limitations did not run on Plaintiff's "improper disclosures" claims prior to his filing of this action on June 8, 2012.

Plaintiff's second through fourth theories of liability under the Privacy Act amount to a claim for "inappropriate safeguards." In essence, Plaintiff alleges NMCSD allowed individuals without authority to view his medical record to view a "problems list" that disclosed his medical diagnosis, and that NMCSD failed to audit, or track, the people who in fact viewed the medical diagnosis using the "problems list." Defendant argues Plaintiff suspected others knew of his confidential medical diagnosis in 2008 and that Plaintiff learned in 2009 of the alleged flaw in the NMCSD medical records system that allowed unauthorized individuals to view the "problems list." (Dkt. No. 22-1 at 5.) Accordingly, Defendant contends Plaintiff's Privacy Act claim is time barred. In response, Plaintiff asserts that his suspicions regarding both inaccurate safeguards and improper disclosure were not confirmed until, at the earliest, June 2010. (Dkt. No. 31 at 19.)

The Court finds that the Parties' disagreement regarding the date on which the statute of limitations began to run on Plaintiff's "inappropriate safeguards" claim stems from differing characterizations of the claim. As stated above, as pled in Plaintiff's First Amended Complaint, Plaintiff's "inappropriate safeguards" claim proceeds on three theories: (1) NMCSD inappropriately allowed employees to access confidential patient diagnoses via the "problem list"; (2) NMCSD's software did not track who accessed the "problems list"; and (3) NMCSD did not provide Plaintiff with a list of people who accessed the "problems list." To the extent that Plaintiff bases an "inappropriate safeguards" claim under the first theory, on NMCSD's alleged allowance of employee access to a "problems list," Plaintiff's claim is barred by the statute of limitations. At his deposition, Plaintiff testified that in 2009, no less than three NMCSD employees showed him that employees could access a "problems list" without accessing a patient's entire medical record. (Dkt. No. 22-5, Notice of Lodgment Ex. A, Atkins Depo at 51:17-25; see also Dkt. No. 31-1, Atkins Decl. ¶¶ 5, 6.) Plaintiff appears to concede this point. (Dkt. No. 31 at 18-19) (acknowledging that Mr. Atkins learned in 2009 that "his information could have been viewed by anyone

who wanted to view the information, <u>generally</u>" but arguing that his "inaccurate safeguards" cause of action did not accrue until July 2011 when he learned that they could be viewed "with no safeguards in place to monitor access") (emphasis in original). Accordingly, the Court finds that the statute of limitations has run on Plaintiff's "inaccurate safeguards" claim to the extent that the claim is based on NMCSD's failure to restrict employee access to medical diagnoses on the "problems list" and GRANTS Defendant's motion for summary judgment on this claim.

However, to the extent that Plaintiff seeks liability for NMCSD's failure to keep an *accurate accounting* of the individuals who accessed the "problems list" and failure to provide Plaintiff with a list of all persons accessing Plaintiff's medical diagnosis via the "problems list," Plaintiff has demonstrated that he did not receive confirmation of this alleged inappropriate safeguard until 2011. (<u>See</u> Dkt. No. 31-1, Atkins Decl. ¶ 7.) To be clear, this theory of liability differs because the alleged "inappropriate safeguard" is NMCSD's failure to implement proper auditing capabilities rather than NMCSD's failure to restrict access. The Court finds that Plaintiff's declaration raises a triable issue of fact as to whether Plaintiff knew or had reason to know of his "inappropriate safeguards" claim based on NMCSD's failure to track access to the "problems list" until 2011. Accordingly, the Court DENIES Defendant's motion for summary judgment on Plaintiff's "inaccurate safeguards" claim based on running of the statute of limtiations, to the extent the "inaccurate safeguards" claim is based on lack of proper auditing capabilities.

**III.    Inappropriate Safeguards**

The Privacy Act requires agencies to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." 5 U.S.C. § 552a(e)(10). The Privacy Act is violated when a plaintiff "shows 1) that the government failed to fulfill

its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages." Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990) (citation omitted).

As discussed above, Plaintiff's only claims under an "inappropriate safeguards" theory of liability under the Privacy Act, that survive the statute of limitations, are: (1) NMCSD's software did not track who accessed the "problems list"; and (2) NMCSD did not provide Plaintiff with a list of people who accessed the "problems list."

### A.  Establishment of Appropriate Safeguards

Defendant first argues Plaintiff cannot establish the government's failure to establish appropriate safeguards to protect Plaintiff's medical records in violation of section (e)(10) of the Privacy Act because Plaintiff has "no evidence to establish the configuration of the AHLTA system" to meet his burden of proving that the government failed to safeguard his records. (Dkt. No. 22-1 at 6.) Defendant argues the only "admissible evidence regarding the configuration of the AHLTA system is NMCSD's explanation of the system through the declaration of Robert Dighello, IT Specialist at NMCSD." (Id. at 6-7.)

Plaintiff opposes, arguing he has sufficient evidence via party admissions to establish that the AHLTA system failed to track access to his confidential medical diagnoses. (Dkt. No. 31 at 11-12.) Specifically, Plaintiff points to evidence in his Declaration, (Dkt. No. 31-1), and Deposition testimony, (Dkt. No. 22-5), that statements made to him by NMCSD employees Dr. Mary Bavaro, Lisa Hess, Joy Martin, and others prove that AHLTA was not able to track access to the "problems list." (Dkt. No. 31 at 11.) Plaintiff argues these admissions were verified by Plaintiff's own viewing of a "problem list" that showed medical diagnoses, (id.) as well as via email by Navy AHLTA Sustainment Trainer Ms. Noel Molinos on June 14, 2011. (Dkt. No. 31-2 Ex. 2.)

//

1   Under the Privacy Act, agencies must enact "appropriate" safeguards; the Act
2   does not prescribe specific technical standards, leaving the agencies to manage their
3   own information security. 5 U.S.C. § 552a(e)(10); see also In re Dep't of Veterans
4   Affairs (VA) Data Theft Litig., MISC. A. 06-0506 JR, 2007 WL 7621261 (D.D.C. Nov.
5   16, 2007). The Court finds Plaintiff's proffered evidence raises a triable issue of fact
6   as to whether the AHLTA system appropriately safeguarded Plaintiff's private medical
7   data. In particular, Plaintiff's testimony and proffered email of Noel Molinos conflict
8   with Defendant's IT Specialist declaration on the question of whether the AHLTA
9   system in fact allowed viewing of a "problems list" showing patient diagnoses
10  unrecorded by access audits during the relevant period.[2] Accordingly, the Court finds
11  Plaintiff's evidentiary showing related to the appropriateness of NMCSD's information
12  protection safeguards sufficient to withstand summary judgment. Anderson v. Liberty
13  Lobby, Inc., 477 U.S. 242, 248 (1986).

14  **B.    Willful or Intentional Misconduct**

15  In addition, Defendant argues Plaintiff cannot establish "willful" or "intentional"
16  government misconduct as required to seek civil penalties for an "inappropriate
17  safeguards" claim under the Privacy Act. (Dkt. No. 22-1 at 8-9.) According to
18  Defendant, Plaintiff has "not articulated, nor does he have, any evidence to support the
19  notion that anyone at NMCSD willfully or intentionally violated the Privacy Act."
20  (Dkt. No. 22-1 at 9.)

21  Plaintiff responds that the evidence shows "willful" or "intentional" conduct
22  because NMCSD knew about the deficiencies in its AHLTA system but failed to
23  remedy the problems. Plaintiff claims the "fact that [the issue of the deficiencies in the
24  AHLTA system] was brought to Mr. Atkins' attention by no less than four of
25  Defendants' employees suggests that there was an extreme departure from patient
26  privacy rights." (Dkt. No. 31 at 14.) At the hearing on this matter, Plaintiff's counsel

27
28      [2]The Court notes that Plaintiff objects to the declaration of Robert Dighello on the grounds that the declaration is vague as to time. (Dkt. No. 31-4.) The Court SUSTAINS Plaintiff's objection, and has not considered the Dighello Declaration.

1  claimed the evidence shows Defendant knew about the problem in 2009, yet did not fix
2  it until 2011, and that this inaction shows willful misconduct. As more fully developed
3  below, the evidence submitted by Plaintiff does not support this claim.

4        The Privacy Act does not impose strict liability for every "technical" violation
5  of its provisions. Instead, the civil remedies provision of the Privacy Act provides that,
6  for any "intentional or willful" refusal or failure to comply with the Act, the United
7  States shall be liable for "actual damages sustained by the individual as a result of the
8  refusal or failure." 5 U.S.C. § 552a(g)(4)(A). To show "intentional or willful" conduct,
9  a plaintiff must present evidence to show that an agency's conduct amounted to "more
10 than gross negligence." Rose v. United States, 905 F.2d 1257, 1260 (9th Cir. 1990)
11 (citing Johnston v. Horne, 875 F.2d 1415, 1422 (9th Cir. 1989)). A plaintiff must show
12 that defendant "flagrantly disregarded" his rights under the Act, or engaged in behavior
13 so patently egregious that anyone undertaking the conduct should have known it was
14 unlawful. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir.1987) (citations
15 omitted).

16       The Court finds that Plaintiff has failed to meet his burden of presenting
17 evidence to show NMCSD's failure to track access to Plaintiff's confidential medical
18 diagnosis amounted to more than gross negligence. As an initial matter, Plaintiff points
19 to no legal authority to support a finding that his proffered evidence suffices to
20 demonstrate "intentional or willful" government conduct. (Dkt. No. 31 at 13-14.)

21       In addition, the record does not support Plaintiff's claim that NMCSD
22 "intentionally or willfully" failed to safeguard his confidential medical diagnosis.
23 Plaintiff's declaration identifies three NMCSD staff members[3] who discussed with
24 Plaintiff the possibility that a "problems list" may be viewable without accessing a
25 patient's full record prior to 2011. (Dkt. No. 31-1 ¶¶ 5-6.) However, Plaintiff's
26 declaration also states that these three staff members "did not know if there was any

27

28       [3]These staff members are Dr. Mary Bavaro, Social Worker Lisa Hess, and Psychologist (or Psychiatrist) Joy Martin. (Dkt. No. 31-1, Atkins Decl. ¶¶ 5-6.)

way to track (1) the person who accessed the information, or (2) the date and time the information was accessed." (Id. ¶ 5.) As discussed above, Plaintiff's only "inappropriate safeguards" claim that falls within the statute of limitations is based on NMCSD's alleged failure to audit access to the "problems list." Plaintiff has introduced no evidence to show that Dr. Bavaro, Lisa Hess, or Joy Martin knew whether or not the AHLTA system tracked access to the "problems list" or told Plaintiff whether or not the AHLTA system did so; in fact, Plaintiff's proffered evidence demonstrates that the three staff members did neither. (See, e.g., Dkt. No. 31-2, Ex. 5, Email from Lisa Hess to Gary Atkins) ("I do not know if the Audit only tracks the 'sensitive' records, I always thought that an audit would show everyone who has looked at that person's medical record, regardless of how it was entered, but not sure."). As such, the Court finds that Plaintiff has introduced no evidence to demonstrate that NMCSD knew about "the problem," as defined by NMCSD's lack of ability to audit access to the problems list, prior to 2011 when the problem was fixed.

Furthermore, the fourth NMCSD staff member's comments to Plaintiff, made by AHLTA trainer Noel Molinos, also fail to establish intentional or willful conduct on behalf of NMCSD. Although Plaintiff's declaration states that Ms. Molinos explained to Plaintiff that there was "no way to audit who had looked at the 'problems list' in 2011," (Dkt. No. 31-1 ¶ 7), the Court's review of the email in question reveals that the trainer merely responded affirmatively to Plaintiff's question: "would it be accurate that if an employee really wanted to risk employment and jail time they could snoop in the system and possibly get away with no record of it?" (Dkt. No. 31-2, Ex. 2, Email exchange between Gary Atkins and Noel Molinos.)  Even assuming Plaintiff's characterization of the email was accurate, Ms. Molinos, at most, acknowledged the lack of an appropriate safeguard to insure the confidentiality of records, not that NMCSD intentionally or willfully failed to establish appropriate safeguards. This evidence falls short of demonstrating government conduct rising above the level of "gross negligence." Cf. Rose v. United States, 905 F.2d 1257, 1260 (9th Cir. 1990)

1  ("The Postal Service's failure to mail [plaintiff's] forms diligently, to notify of her
2  rights, and to provide her the appropriate forms proves at best negligence.").

3  Because Plaintiff has failed to offer sufficient evidence to support a finding that
4  the government willfully or intentionally failed to safeguard Plaintiff's confidential
5  medical diagnosis, the Court GRANTS Defendant's motion for summary judgment on
6  Plaintiff's "inappropriate safeguards" claim. See Celotex Corp. v. Catrett, 477 U.S.
7  317, 325, 327 (1986).

**C.  Actual Damages**

9  Defendant further argues Plaintiff cannot establish economic damages arising
10 out of an "inappropriate safeguards" claim. (Dkt. No. 22-1 at 9.) "Actual damages" are
11 a required element of Privacy Act claims. Doe v. Chao, 540 U.S. 614, 617-18, 627
12 (2004). The term "actual damages" in the Privacy Act is "limited to proven pecuniary
13 or economic harm." Fed. Aviation Admin. v. Cooper, __ U.S. __, 132 S.Ct. 1441, 1453
14 (2012). "An individual bringing a claim under the Privacy Act must demonstrate a
15 causal connection between the alleged violation of the Act and the harm suffered by
16 the individual." Houlihan v. Office of Pers. Mgmt., 909 F.2d 383, 384 (9th Cir. 1990)
17 (internal quotation marks omitted).

18 Because the Court finds Plaintiff cannot show "willful" or "intentional"
19 government conduct in relation to his claim for "inappropriate safeguards," the Court
20 declines to address whether Plaintiff has introduced sufficient evidence to raise a
21 triable issue of material fact on the issue of actual damages. Accordingly, the Court
22 OVERRULES AS MOOT Defendant's objections to Plaintiff's evidence submitted in
23 support of actual damages pursuant to Federal Rules of Civil Procedure 37(c). (Dkt.
24 No. 32 at 9-10.)

**IV.  Improper Disclosure**

26 In addition to providing a remedy for inappropriate safeguards, the Privacy Act
27 prevents an agency from disclosing "any record . . . contained in a system of records"
28 without the written consent of the "individual to whom the record pertains." 5 U.S.C.

1  § 552a(b). "To establish a claim for wrongful disclosure under the Privacy Act,
2  Plaintiff must establish that (1) [his] diagnosis information is a record contained in a
3  system of records; (2) the [NMCSD] disclosed the information improperly; (3) the
4  disclosure had an adverse effect on Plaintiff; (4) the disclosure was willful or
5  intentional; and (5) Plaintiff suffered actual damages." Stafford v. Social Sec. Admin.,
6  437 F. Supp. 2d 1113, 1117 (N.D. Cal. 2006) (citing Doe v. Chao, 540 U.S. 614,
7  622-23 (2004)). In determining intent or willfulness, the Court examines (1) the
8  "purpose" for which the disclosure was made; (2) "the source of the idea to" make the
9  disclosure; and (3) other "circumstances surrounding the disclosure." Albright v.
10 United States, 732 F.2d 181, 189 (D.C. Cir. 1984)).

11      Defendant moves to dismiss Plaintiff's "improper disclosure" Privacy Act claim
12 on the ground that Plaintiff cannot meet his burden of establishing that an "improper
13 disclosure" occurred in violation of the Privacy Act. (Dkt. No. 22-1 at 7-8.) In
14 response, Plaintiff claims his proffered evidence supports a conclusion that three
15 improper disclosures occurred: (1) Plaintiff claims Lt. Commander Simons made an
16 improper disclosure of Plaintiff's diagnosis to Captain Pratt; (2) Plaintiff claims Lt.
17 Commander Simons made an improper disclosure of his medical diagnosis in an open
18 corridor where anyone could hear; and (3) Plaintiff claims there is an inference that his
19 diagnosis was discussed "between Simons, Pratt, Young and Eng." (Dkt. No. 31 at 17.)

20      The Court finds that Plaintiff's proffered evidence fails to raise a triable issue of
21 material fact and is too speculative to lead a rational trier of fact to find that an
22 actionable "improper disclosure" occurred within the meaning of the Privacy Act. See
23 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As for
24 the first disclosure, to support his claim that Lt. Commander Simons made an improper
25 disclosure of Plaintiff's diagnosis to Captain Pratt, Plaintiff points to his declaration
26 stating that Lt. Commander Simons "apprised Pratt of the situation" after Plaintiff
27 complained to the privacy officer about Lt. Commander Simons' hallway disclosure.
28 (Id.) Plaintiff states that direct evidence of the disclosure exists because, "[r]ather than

deny Mr. Atkins' direct accusation that Commander Simons had made unauthorized access to his medical information through AHLTA, Pratt and Simons expressly stated that they had the authority to view the records, and that Hospital policy permitted it." (Id.)

Although Plaintiff's declaration provides support for the conclusion that Captain Pratt and Lt. Commander Simons individually improperly accessed Plaintiff's private medical data and stated a belief that they had authority to access Plaintiff's medical information, Plaintiff provides no evidence demonstrating that Captain Pratt learned about Plaintiff's diagnosis from Lt. Commander Simons. In fact, Plaintiff's declaration instead supports the conclusion that Captain Pratt may have accessed Plaintiff's medical information via authorized or unauthorized use of the AHLTA system rather than through the "improper disclosure" by Lt. Commander Simons as claimed by Plaintiff. Absent evidence of an "improper disclosure" from Lt. Commander Simons to Captain Pratt, "unauthorized access" of the AHLTA system is not actionable under the Privacy Act. See Cacho v. Chertoff, No. 06-00292(ESH), 2006 WL 3422548 at *5 (D.D.C. Nov. 28, 2006) (holding that no private right of action exists under the Privacy Act for unauthorized or improper access of records). Accordingly, the Court finds Plaintiff's proffered evidence too speculative to lead a rational trier of fact to conclude that Lt. Commander Simons improperly disclosed a record to Captain Pratt in violation of the Privacy Act.

As to the second allegedly improper disclosure, Plaintiff claims Lt. Commander Simons made a public improper disclosure when, during a recorded conversation between Plaintiff and Lt. Commander Simons in a hallway corridor, Simons "made a reference to a term that is closely connected to the medical problems that Mr. Atkins suffers from." (Dkt. No. 31 at 17; Dkt. No. 31-1 ¶ 10.) Having reviewed the transcript of the recorded conversation, the Court finds that Plaintiff's declaration and the recorded conversation fail to raise a triable issue of material fact and that no rational trier of fact could find Lt. Commander Simons' comment to be an "improper

1 disclosure" within the meaning of the Privacy Act. As an initial matter, Plaintiff has
2 introduced no evidence that anyone except for Plaintiff heard Lt. Commander Simons'
3 statement. Although the transcribed recorded conversation indicates a "witness 3" was
4 originally present in the conversation, the transcript reflects that Mr. Atkins and Lt.
5 Commander Simons exchanged at least ten uninterrupted conversational exchanges
6 prior to and after the allegedly improper disclosure. (Dkt. No. 31-2, Notice of
7 Lodgment Ex. 1.) Plaintiff's declaration and deposition testimony mention no witnesses
8 when describing the hallway incident with Lt. Commander Simons. (Dkt. No. 31-1,
9 Atkins Decl. ¶ 10; Dkt. No. 22-5, Atkins Depo at 22.) Without evidence that any third
10 parties heard Lt. Commander Simons' allegedly disclosing statement, Plaintiff has
11 failed to demonstrate that a disclosure occurred.

12 Furthermore, the Court's review of the transcribed conversation shows that, in
13 response to Plaintiff saying he didn't know what acupuncture would be helpful for, Lt.
14 Commander Simons stated: "[s]tress and relaxation but it also has been proven to um,
15 increase ***** and stuff like that." (Dkt. No. 31-2, Notice of Lodgment Ex. 1 at 3)
16 (redaction in original). The transcript reflects that Plaintiff responded, "Hm.
17 Interesting. Okay." and that he and Lt. Commander Simons continued a conversation
18 with no apparent signs of a reaction to or agitation caused by Simons' statement. (Id.)
19 The Court finds that, viewing the evidence in the light most favorable to the Plaintiff,
20 even if Lt. Commander Simons made reference to a term "closely connected" to Mr.
21 Atkins' medical condition, (Dkt. No. 31 at 17), the statement provides insufficient
22 evidence that Lt. Commander Simons improperly disclosed an agency record. Plaintiff
23 has introduced no evidence supporting a connection between the term used by Simons
24 and Plaintiff's medical condition; similarly, Plaintiff has failed to link Simon's
25 comment or knowledge of Plaintiff's medial diagnosis to information contained in an
26 agency record. Accordingly, the Court finds Plaintiff's proffered evidence too
27 speculative to lead a rational trier of fact to conclude that Lt. Commander Simons
28 improperly disclosed a record, while in conversation with Plaintiff, in violation of the

Privacy Act.

Third and last, Plaintiff contends that there "is an inference that Mr. Atkins' diagnosis was discussed between Simons, Pratt, Young and Eng." (Dkt. No. 31 at 17; Dkt. No. 31-1 ¶ 12.) To support this "inference" of an improper disclosure, Plaintiff seeks to draw from his testimony that "I called Klant, who told me that he, Pratt, Young and Eng, who was the Medical Administrative Officer, would be having a meeting regarding the issue, but that I was not invited. I do not know if the meeting took place." (Dkt. No. 31-1 ¶ 12.) This evidence is more speculative still. The "inference" Plaintiff seeks to establish relies on an assumption that "Pratt, Young and Eng" in fact met regarding Plaintiff's privacy concerns and that Captain Pratt in fact disclosed an agency record during that meeting. These assumptions are simply not supported by the record and are not sufficient to carry Plaintiff's burden of proffering evidence sufficient for a trier of fact to find that an improper disclosure occurred within the meaning of the Privacy Act.

Finally, there is no evidence to support that any allegedly improper disclosure was made willfully or intentionally in order to support a claim for damages. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's Privacy Act claim based on an "improper disclosure" theory.

**V. Enlargement of Time for Discovery**

The Court notes that, at the hearing on this matter, Plaintiff's counsel requested more time to conduct discovery in this case. The Court DENIES the request.

On March 7, 2014, one week after Defendant filed the present motion for summary judgment, Plaintiff's counsel filed an "ex parte motion to shorten time for a motion to allow discovery beyond discovery cutoff" before Magistrate Judge William V. Gallo. (Dkt. No. 24.) In support of the motion, Plaintiff's counsel documented a string of calamities that befell him during the latter part of 2013 and early 2014. (Dkt. No. 24-1, Baisch Decl.; Dkt. No. 24-2, Smee Decl.)

On March 11, 2014, Judge Gallo denied the motion, because: (1) Mr. Baisch

1 participated in the telephonic Case Management Conference during which the fact
2 discovery deadline was set and therefore had notice of the deadline for the close of
3 discovery; (2) Counsel of record for Plaintiff is the law firm for which Mr. Baisch
4 worked, and it is incumbent upon counsel of record to conduct discovery in the time
5 frame set out by the court; and (3) Mr. Baisch waited nearly a month after learning at
6 the February 10, 2014 Mandatory Settlement Conference that the discovery deadline
7 had passed to file a motion to extend discovery. (Dkt. No. 26.) Judge Gallo also noted
8 that Mr. Baisch has never filed a notice of appearance for Plaintiff on the Court's
9 docket. (Id.)

10 Although the Court is sympathetic to Mr. Baisch's unfortunate circumstances
11 and recognizes the "strong policy underlying the Federal Rules of Civil Procedure
12 favoring decisions on the merits," Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.
13 1986), the Court will not grant Mr. Baisch's oral request at hearing to enlarge the time
14 for discovery in this case. As an initial matter, the Court finds counsel's oral motion
15 insufficient, where counsel had the opportunity to appeal Judge Gallo's order to this
16 Court, see Fed. R. Civ. P. 72(a), or to make a showing that Plaintiff "cannot present
17 facts essential to justify its opposition" for "specified reasons" under Federal Rule of
18 Civil Procedure 56(d). Furthermore, given the facts that Plaintiff's counsel of record
19 in this case is "Grady and Associates," (Dkt. No. 1-1, Civil Cover Sheet); that another
20 Grady and Associates attorney represented Plaintiff at the Mandatory Settlement
21 Conference on February 10, 2014; and that Mr. Baisch has not explained the firm's
22 failures to request an extension of time to conduct discovery until after Defendant filed
23 the present motion for summary judgment, the Court DENIES Plaintiff's oral request
24 for extension of time to conduct discovery.
25 //
26 //
27 //
28 //

**CONCLUSION AND ORDER**

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment. (Dkt. No. 22.) Accordingly, the Court **DENIES** as moot the Parties' joint motion to continue the final pretrial conference currently set for June 27, 2014. (Dkt. No. 35.) The Clerk of Court is instructed to enter judgment in favor of Defendant and terminate the case.

**IT IS SO ORDERED.**

DATED: June 13, 2014

HON. GONZALO P. CURIEL
United States District Judge